## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| LEESHA KAYE HOWELL,<br><br>       Plaintiff,<br><br>vs.<br><br>ACCURATE BACKGROUND, LLC,<br><br>       Defendant. | Case No.:  3:23-cv-470-GNS<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Leesha Kaye Howell ("Plaintiff"), by and through the undersigned counsel, brings the following Complaint and Demand for Jury Trial against Accurate Background, LLC ("Accurate") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Accurate published to Plaintiff's potential employer, which falsely portrayed Plaintiff as a convicted felon.

### INTRODUCTION

1.      This is an individual action for damages, costs, and attorney's fees brought against Accurate pursuant to the FCRA, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.      Accurate is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.      Accurate falsely reported to Plaintiff's prospective employer that Plaintiff was convicted of felony assault, wanton endangerment, misdemeanor possession of controlled dangerous substance, and failure of owner to maintain required insurance – second or greater offense. Accurate's reporting is flagrantly inaccurate and untrue.

1

4.      Plaintiff has never been convicted or pled guilty to any felony crimes in her life, nor of the above-mentioned misdemeanors.

5.      Plaintiff's prospective employer denied Plaintiff's job application after receiving an employment background check report from Accurate, which included the inaccurate misdemeanor and felony convictions, which do not belong to Plaintiff.

6.      Accurate's inaccurate reporting could have easily been avoided had Accurate reviewed the widely available underlying public court records from Jefferson County, Kentucky regarding the felony and misdemeanor convictions prior to publishing Plaintiff's report to her prospective employer.

7.      Had Accurate performed even a cursory review of the underlying public court records, it would have discovered that the criminal records belong to a different consumer who is wholly distinguishable from Plaintiff by their first name, middle name, Social Security Number and date of birth.

8.      Accurate does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Accurate's failure to employ reasonable procedures resulted in Plaintiff's report being flagrantly inaccurate.

9.      Accurate committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10.     Accurate's inaccurate report cost Plaintiff a good job that suits her needs and job security.

11.     As a result of Accurate's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and

benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12. As a result of Accurate's conduct, action, and inaction, Plaintiff brings claims against Accurate for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and for failing to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed – **the criminal records that do not belong to her** – was inaccurate and delete the disputed information from the subject employment report, in violation of the FCRA, 15 U.S.C. § 1681i.

## PARTIES

13. Plaintiff is a natural person residing in Louisville, Kentucky, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14. Accurate is a California corporation doing business throughout the United States, including the State of Kentucky and in this District, and has a principal place of business located at 200 Spectrum Center Drive, Suite 1100, Irvine, CA 92618. Accurate can be served through its registered agent at C T Corporation Systems 330 N. Brand Blvd, Suite 700 Glendale, CA 91203.

15. Among other things, Accurate sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

16.     Accurate is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

### THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23.     Despite its name, the FCRA covers more than just credit reporting, it also regulates employment background check reports like the one Accurate prepared in Plaintiff's name.

24.     The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25.     In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Accurate, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

26.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28.    Accurate disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## ACCURATE'S ILLEGAL BUSINESS PRACTICES

29.    Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

30.    As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

31.    The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

32.    Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

33.    Background check companies, like Accurate, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

34.     Given that Accurate is in the business of selling background checks, Accurate should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

35.     Accurate places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Accurate to produce reports containing information that is inaccurate and incomplete than it is for Accurate to exert proper quality control over the reports prior to their being provided to Accurate's customers.

36.     Accurate reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

37.     Accurate charges its customers the same price for reports that are flagrantly inaccurate as it does for accurate reports.

38.     Appropriate quality control review of Plaintiff's report would have made clear that Accurate was reporting misdemeanor and felony convictions that belong to an unrelated consumer who has a different first and middle name, date of birth, and social security number than Plaintiff.

39.     As a provider of background check reports, Accurate should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

**FACTUAL ALLEGATIONS**

**Plaintiff Applied for a Job with Circle K**

40.     Plaintiff is a registered nurse who is terminally ill. Because of her terminal condition, Plaintiff has many restrictions on her ability to work, such as being unable to lift heavy weights and being unable to stay in the heat for long periods of time.

41.     Accordingly, Plaintiff was looking for a job that suited her needs.

42.     In or around mid-June 2023, Plaintiff applied for a part-time employment position as a store representative with Circle K, located close to her home.

43.     A week after applying to Circle K, Plaintiff successfully completed an interview and passed a drug test.

44.     In or around late June 2023, Circle K offer the position to which Plaintiff applied pending passing a background check ("employment report").

**Accurate Published an Inaccurate Background Check
Report to Community Medical Services**

45.     Circle K contracted with Accurate to conduct background checks, including criminal background checks, on its prospective employees.

46.     On or about July 1, 2023, Circle K ordered a criminal background check on Plaintiff from Accurate.

47.     On or about July 6, 2023, in accordance with its standard procedures, Accurate completed its employment report about Plaintiff and sold the same to Circle K.

48.     Within that employment report, Accurate published inaccurate information about Plaintiff.

49.     Specifically, Accurate's employment report about Plaintiff included four flagrantly inaccurate and stigmatizing misdemeanor and felony convictions from Jefferson County, Kentucky, which appeared in the employment report as follows:

| IDENTIFICATION INFORMATION ON FILE IN COURT RECORDS | |
|---|---|
| Name | LEESHA KAYE HOWELL |
| DOB | 03/01/XXXX |
| SSN | XXX-XX-0132 |
| Case Number | 17M016891 |
| Location | JEFFERSON, KY |
| File Date | 11/20/2017 |
| Remarks | VERIFIED BY NAME,DATE OF BIRTH AND SOCIAL SECURITY NUMBER |
| Charge | 1 Count(s) - POSSESSION OF CONTROLLED DANGEROUS SUBSTANCE -Misdemeanor |
| Disposition | GUILTY |
| Disposition Date | 6/21/2018 |
| Sentence | SENTENCING SUMMARY:2 YEAR(S) CONDITIONAL DISCHARGE; ; 30 DAY(S) JAIL; JAIL SUSPENDED; . |

| IDENTIFICATION INFORMATION ON FILE IN COURT RECORDS | |
|---|---|
| Name | LEESHA KAYE HOWELL |
| DOB | 03/01/XXXX |
| SSN | XXX-XX-0132 |
| Case Number | 19CR003465-002 |
| Location | JEFFERSON, KY |
| File Date | 12/30/2019 |
| Remarks | VERIFIED BY NAME,DATE OF BIRTH AND SOCIAL SECURITY NUMBER |
| Charge | 1 Count(s) - ASSAULT -Felony |
| Disposition | GUILTY SENTENCING SUMMARY:5 YEAR(S) PROBATION; ; 2 YEAR(S) 6 MONTH(S) PRISON; PRISON SUSPENDED; |
| Disposition Date | 7/16/2021 |

| IDENTIFICATION INFORMATION ON FILE IN COURT RECORDS | |
|---|---|
| Name | LEESHA KAYE HOWELL |
| DOB | 03/01/XXXX |
| SSN | XXX-XX-0132 |
| Case Number | 20CR001199 |

| | |
|---|---|
| Location | JEFFERSON, KY |
| File Date | 7/8/2020 |
| Remarks | VERIFIED BY NAME,DATE OF BIRTH AND SOCIAL SECURITY NUMBER |
| Charge | 1 Count(s) - WANTON ENDANGERMENT -Felony |
| Disposition | GUILTY SENTENCING SUMMARY:5 YEAR(S) PROBATION; ; 2 YEAR(S) 6 MONTH(S) PRISON; |
| Disposition Date | 7/21/2021 |

| IDENTIFICATION INFORMATION ON FILE IN COURT RECORDS | |
|---|---|
| Name | LEESHA KAYE HOWELL |
| DOB | 03/01/XXXX |
| SSN | XXX-XX-0132 |
| Case Number | 20F002881 |
| Location | JEFFERSON, KY |
| File Date | 3/17/2020 |
| Remarks | VERIFIED BY NAME,DATE OF BIRTH AND SOCIAL SECURITY NUMBER |
| Charge | 1 Count(s) - FAILURE OF OWNER TO MAINTAIN REQUIRED INSURANCE - SECOND OR GREATER OFFENSE -Misdemeanor |
| Disposition | GUILTY |
| Disposition Date | 8/13/2021 |
| Sentence | SENTENCING SUMMARY:32 DAY(S) JAIL; 30 DAY(S) JAIL SUSPENDED; ; 2 YEAR(S) CONDITIONAL DISCHARGE; ; FINES: $2,500.00. |

50.    The criminal convictions reported by Accurate about Plaintiff to Circle K **do not** belong to Plaintiff.

51.    Plaintiff has never been charged with – much less convicted of – a felony crime in her life, nor of the offenses of misdemeanor possession of controlled dangerous substance or failure of owner to maintain required insurance.

52.    A cursory review of the widely available underlying public court records confirms that the records belong to an unrelated female, Kasentia Monette Howell ("Convicted Felon Howell").

53.    Had Accurate actually consulted or obtained the widely available underlying public court records regarding the four convictions, it would have seen obvious discrepancies between Convicted Felon Howell and Plaintiff.

54.    The discrepancies that should have caused Accurate to realize Plaintiff is not the same person as Convicted Felon Howell include the following:

(a)    First, and most glaringly – Plaintiff's legal name is "Leesha Kaye Howell," and the criminal records reported by Accurate very obviously belong to a "Kasentia Monette Howell." Plaintiff's name is clearly indicated on the face of the background report prepared by Accurate, and the public records themselves clearly reflect that Plaintiff's name is **not** contained within the public records from Jefferson County, Kentucky;

(b)    Second, Plaintiff's date of birth – which was provided to Accurate prior to publishing the subject employment report – is March 1, 1974, yet the underlying public court records indicate that Convicted Felon Howell's date of birth is September 1988;

(c)    Plaintiff's Social Security number, which was provided to Accurate is contained on the face of the subject employment report is entirely different than that of Convicted Felon Howell.

55.     The sole reason the inaccurate criminal records were reported as belonging to Plaintiff was that Accurate failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

56.     Had Accurate followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal convictions belong to an unrelated individual with a different first and middle name than Plaintiff, a different date of birth, and a different Social Security Number.

57.     In preparing and selling a consumer report about Plaintiff, wherein Accurate published to Plaintiff's prospective employer inaccurate information about Plaintiff, Accurate failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### Circle K Denied Plaintiff's Job Application

58.     On or about July 6, 2023, along with a copy of her background check, Plaintiff received a pre-adverse action letter from Circle K notifying that her employment application was being denied as a direct result of the felony convictions reported by Accurate.

59.     At first, Plaintiff did not look at the background check because she was not concerned about the results. Plaintiff knew she had no felonies and that was the only requirement.

60.     However, after not hearing from Circle K for a period of time, Plaintiff reached out to Circle K to inquire about the position.

61.    On or about July 13, Plaintiff spoke with the Circle K representative who informed her that Circle K had to move forward with another candidate because she failed the background check due to the felonies on her report.

62.    Plaintiff was shocked, appalled, and devastated upon learning of **felony** criminal records allegedly being attributed to her.

63.    Shortly thereafter, upon reviewing the copy of the subject employment report, Plaintiff was shocked and humiliated upon reviewing and realizing that the serious criminal convictions of another – namely, Convicted Felon Howell – were published in the employment report Accurate sold about Plaintiff to Circle K.

64.    Plaintiff was very panicked, confused, and concerned about the impact of Convicted Felon Howell's serious criminal convictions reported on the subject employment report – specifically, the impact of the same on her future.

65.    Specifically, Accurate matched Plaintiff and Convicted Felon Howell and published the criminal records of Convicted Felon Howell onto the employment report about Plaintiff and sold that report to Plaintiff's prospective employer. This exculpatory public record information was widely available to Accurate prior to publishing Plaintiff's employment report to Circle K, but Accurate failed to perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Accurate's Employment Report**

66.    On or about July 13, 2023, upset and stressed because of lost employment opportunity with Circle K and riddled with worry over the far-reaching impacts of being confused with a convicted felon, Plaintiff disputed the inaccurate information with Accurate. Plaintiff disputed via telephone with Accurate.

67.    Plaintiff identified herself and provided her full name, date of birth, and Social Security Number to Accurate to support her dispute.

68.    Plaintiff specifically disputed the criminal records of Convicted Felon Howell.

69.    Plaintiff specifically stated that the criminal records do not belong to Plaintiff.

70.    Plaintiff specifically asked Accurate to investigate and delete Convicted Felon Howell's criminal records from any employment report about Plaintiff.

71.    Furthermore, on or around July 19, 2023, Plaintiff borrowed money so she could afford to drive to Frankfort, Kentucky to personally obtain her criminal history from the Kentucky Criminal Records Dissemination Section.

72.    Plaintiff's public records did not contain the same inaccurate information published by Accurate in Plaintiff's consumer report.

**Plaintiff Disputed the Misinformation in Accurate's
Employment Report for the Second Time**

73.    On or about July 29, 2023, Plaintiff called Accurate when she had not heard back concerning her dispute.

74.    Plaintiff spoke with a representative of Accurate correspondence, who informed her that it had in fact already completed its reinvestigation of Plaintiff's dispute, determined its reporting was accurate, and that it had found no evidence the information was inaccurate.

75.    Plaintiff was horrified, and once again disputed Accurate's inaccurate reporting.

76.    Plaintiff asked to speak to an Accurate supervisor who again verified that the background report showed the same inaccuracies.

77.    Accurate's representative told Plaintiff to contact the police department and make a complaint related to identity theft, and that there was nothing further Accurate could do for her.

78.    After the call with Accurate's represenstative, on or about July 29, 2023, Plaintiff sent Accurate an email with a copy of her driver's license, address, date of birth, her full name, and a recently issued Kentucky state police background check.

79.    Plaintiff then spoke with a police officer in an attempt to file a police report.

80.    The police officer informed Plaintiff that her criminal record was showing up correctly on the Kentucky state police background check and therefore upon her belief in speaking with the officers, her identity was not stolen.

81.    Accurate failed to conduct a reasonable reinvestigation of Plaintiff's July 13, 2023, dispute and failed to delete the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

82.    On or about August 16, 2023, Plaintiff received an updated consumer report from Accurate with the inaccurate criminal record removed from her report.

83.    Despite the corrected report, Plaintiff has been unable to obtain employment that offers her a steady income.

84.    Plaintiff reasonably believes that due to Accurate's inaccurate reporting, Circle K refused to hire Plaintiff for a permanent position as an attendant.

85.    But for Accurate's inaccurate employment report, Plaintiff's job offer would have proceeded to a hiring action, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Accurate's erroneous reporting.

86.    Accurate's false report cost Plaintiff a promising job that well-suits her needs with Circle K.

87.     Plaintiff was particularly excited to work as an attendant at Circle K because she was qualified to successfully perform the work and the position did not require her to lift heavy objects. More importantly, the position with Circle K well suited her needs as a terminally ill person, and the job was close to her living place.

88.     The injuries suffered by Plaintiff as a direct result of Accurate's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Accurate's conduct would have given rise to causes of action based on defamation and invasion of privacy.

89.     As a result of Accurate's violations of the FCRA, Plaintiff has been forced to take low paying gig jobs when she can, such as cleaning people's homes, and gig positions stocking the shelves at Circle K.

90.     Plaintiff has been unable to obtain non-gig employment.

91.     Plaintiff is still unable to obtain employment which will guarantee her a steady income.

92.     Plaintiff was hoping to make enough money by working at Circle K to renew her nursing license and begin looking for a higher paying job as a nurse.

93.     Plaintiff is struggling to pay for her housing and car insurance as she was unable to obtain employment with Circle K.

94.     Plaintiff is afraid she will end up homeless again if she is unable to obtain employment to pay her bills.

95.     Plaintiff is unable to find employment that fits her needs as a terminally ill person in the same manner the position at Circle K did.

96.     Plaintiff has also suffered with issues related to loss of sleep, as Plaintiff's constant state of anxiety and distress has regularly made it difficult for Plaintiff to fall asleep and/or stay asleep throughout the night.

97.     As a result of Accurate's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

**CLAIMS FOR RELIEF**

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

98.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

99.     Accurate is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

100.    At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

101.    At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

102.    Accurate violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

103.    As a result of Accurate's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

104.    Accurate willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

105.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Accurate in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT II
### 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation

106.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

107.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

108.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

109.    On at least one occasion during 2023, Plaintiff disputed the inaccurate information with Accurate and requested that Accurate correct and/or delete the inaccurate information in the employment report that is patently inaccurate, misleading, and highly damaging to her, namely, stating that she is a convicted felon.

110.    In response to Plaintiff's dispute, Accurate failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the employment report and refused to correct the employment report at issue.

111.    Accurate violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to delete the disputed inaccurate information from the subject employment report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a public source it has reason to know is unreliable.

112.    As a result of Accurate's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and

benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

113.    Accurate willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

114.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Accurate in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Accurate negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 8th day of September 2023.

/s/ James Craig
James Craig
**CRAIG HENRY PLC**
401 West Main Street, Suite 1900
Louisville, KY 40202
T: 502-614-5962
F: 502-625-5272
E: jcraig@craighenrylaw.com

James Ristvedt, AZ Bar #035938
*(Pro Hac Vice Forthcoming)*
CONSUMER ATTORNEYS
8245 N. 85th Way
Scottsdale, AZ 85258
E: jristvedt@consumerattorneys.com
T: (480) 626-1956

*Attorneys for Plaintiff*
*Leesha Kaye Howell*